IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| ANDREA MANRIQUE YARURO, | § § § | |
| Plaintiff, | § § | NO. 7:22-cv-00039-WLS |
| v. | § § § | |
| UNITED STATES OF AMERICA, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, LASALLE SOUTHEAST LLC, DAVID PAULK, HOWARD, McMAHAN, AMBER HUGHES, "FNU" BATTLE; UNNAMED ICDC OFFICERS ##1-5, "FNU" WATSON, "FNU" CHAPPELLE, | § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM IN OPPOSITION TO
LASALLE SOUTHEAST, LLC'S RULE 12(b)(6) MOTION TO DISMISS**

COMES NOW, through undersigned counsel, Plaintiff Andrea Manrique Yaruro ("Ms. Manrique Yaruro") and respectfully submits, this Memorandum in Opposition to Defendant Lasalle Southeast, LLC's ("Lasalle") Motion to Dismiss, and in support thereof states as follows:

## I. FACTUAL BACKGROUND

On April 12, 2019, ICE arrested Ms. Manrique Yaruro, a Columbian asylum seeker, and detained her at Irwin County Detention Center ("ICDC"), an immigration detention facility operated by Defendant Lasalle. *See* ECF No. 1 ¶¶26, 28. In April of 2020, a video of Ms. Manrique Yaruro and a group of other women detained at ICDC discussing the lack of COVID-19 safety precautions in the facility circulated widely on social media and attracted significant press attention. *Id*. ¶¶30-31.

1

Shortly after, ICDC staff and Immigration and Customs Enforcement ("ICE") Deportation Officer William White berated the women for making the video. *Id*. ¶¶33-34. On April 21, 2020, ICDC guards threw Ms. Manrique Yaruro into a table, degrading and dislocating discs in her spine. *Id*. ¶¶36, 56.

This injury caused pain so intense in Ms. Manrique Yaruro's back and spine that she needed the help of the other women in her unit to walk, stand, and dress. *Id*. ¶26. Lasalle employees sometimes provided Ms. Manrique Yaruro with a wheelchair to go to the medical unit and back, but denied her access to the wheelchair in all other instances, even to even to get food in the cafeteria. *Id*. ¶54. As a result of her mobility issues, Ms. Manrique Yaruro was periodically unable to access ICDC meals. *Id*. When ICDC staff observed Ms. Manrique Yaruro screaming in pain, they would tell her that they were sorry, but that ICE was responsible for getting her the help she needed. *Id*. ¶55.

On April 24, May 6, May 18, June 3, June 15, June 29, July 23, July 30, August 13, September 16, October 24, and November 2, 2020, Ms. Manrique Yaruro complained about her back pain to Lasalle employees Defendant Amber Hughes, a nurse at ICDC, and Defendant Howard McMahan, ICDC's medical director. *Id*. ¶ 49. Though Ms. Manrique Yaruo told Defendant Hughes that Lasalle employees regularly did not provide her prescribed pain medications, Defendant Hughes failed to resolve the issue for weeks at a time. *Id*. ¶49. On May 8, 2020, Defendant Hughes observed that Ms. Manrique Yaruro could not walk or sit down. *See* Exhibit 1, Excerpted Medical Records of Ms. Manrique Yaruro at 1.[1] Defendant Hughes observed Ms. Manrique Yaruro's difficulties walking on June 15, June 29 and noted that Lasalle

---

[1] Though courts typically do not look outside of the complaint when deciding motions to dismiss, we submit this rebuttal evidence in the event that the Court deems it proper to accept Defendant Lasalle's extrinsic evidence and convert the motion into a motion for summary judgment. *See Turner v. Burnside*, 541 F.3d 1077, 1083 (11th Cir. 2008).

staff brought her to the medical unit in a wheelchair on July 30, 2020. *Id*. at 2-4. On August 13, 2020, though Defendant Hughes knew of Ms. Manrique Yaruro's debilitating back pain and mobility problems for four months, she denied Ms. Manrirqe Yaruro's request for a thicker mattress. *Id*. at 5. On August 21, 2020, a magnetic resonance imaging scan found damage to her spinal discs. *Id*. at 6-7. Dr. David Faulk, another Lasalle medical employee, observed Ms. Manrique Yaruro's labored walking on September 22, 2020. *Id*. ICDC medical staff finally ordered Ms. Manrique Yaruro an extra thick mattress and a foam wedge on September 2, 2020 and a back on September 17, 2020. ECF No. 1 ¶51.

Though Ms. Manrique Yaruro requested specialist care for her back injuries from Defendant Hughes on July 30, 2020, ICDC medical staff did not even order a referral to an orthopedic spine specialist until October 25, 2020. *Id*. 52. However, she never received any of those accommodations, and ICE eventually released her on December 24, 2020. *Id*. ¶¶51, 57.

## II.   STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citations and quotations omitted). At the motion to dismiss stage, courts must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). The facts, taken as true, must state a claim "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss should be granted only when the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When asserting a failure to exhaust administrative remedies defense, "Defendants have the burden of establishing what particular remedies were available to Plaintiff and how Plaintiff failed to fully utilize them." *Jones v. Bock,* 549 U.S. 199, 127 (2007).

### III.    ARGUMENT

#### A. Ms. Manrique Yaruro Sufficiently Pled That Lasalle Excluded Her From and Denied Her the Benefits of ICDC Programs and Services.

Defendant Lasalle argues that Ms. Manrique Yaruro did not specify which ICDC programs or services she was unable to access. ECF No. 9 at 7. The Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of ... his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Supreme Court recognized that "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff]'s disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted" exclusion from and denial of the benefits of a prison's programs or activities. *United States v. Georgia*, 546 U.S. 151, 157 (2006).

Courts have also found that, under the Rehabilitation Act and the Americans with Disabilities Act ("ADA"),[2] access to meals within a detention facility are a service for the purposes of the Rehabilitation Act. *See e.g. Shaw v. Pennsylvania Dep't of Corr.*, No. CV 17-229, 2018 WL 6831148, at *7 (W.D. Pa. Dec. 28, 2018) (Denying motion to dismiss where defendant's failed to provide a wheelchair and "fair reading of the Amended Complaint suggests that the alternative accommodations offered by the prison were insufficient to allow Plaintiff to meaningfully access vital services, including meals."); *Jaros v. Illinois Dep't of Corr.*, 684 F.3d

---

[2] Relevant standards under the Rehabilitation Act and ADA are identical. *Cutter v. Wilkinson,* 544 U.S. 709, 716 n. 4 (2005).

4

667, 672 (7th Cir. 2012). Other courts have found that denial of access to a prison's mobility assistance program is actionable under the Rehabilitation Act. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 74 (2d Cir. 2016); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020). Finally, "[p]roviding prisoners a bed, especially one medically prescribed, is arguably a service within the meaning of the ADA." *Timmons v. Martin*, No. 6:17-CV-116, 2019 WL 6339922, at *5 n. 4 (S.D. Ga. Nov. 1, 2019), *report and recommendation adopted,* No. 6:17-CV-116, 2019 WL 6356871 (S.D. Ga. Nov. 26, 2019).

Defendant Lasalle correctly the Rehabilitation Act does not support claims regarding adverse medical treatment decisions. ECF No. 9 at 8. However, a facility's "failure to provide access to already prescribed medications is not. . . a medical 'judgment' subject to differing opinion—it is an outright denial of medical services" and is therefore actionable under the Rehabilitation Act. *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 287 (1st Cir. 2006); *cf. George v. Cnty. of Jefferson*, No. 2:10-CV-3389-AKK, 2013 WL 5519509, at *10 (N.D. Ala. Sept. 30, 2013) (Granting motion to dismiss because plaintiff could not "establish the denial of medical services and programs necessary to sustain a disability claim.").

Ms. Manrique Yaruro pled that because of the pain in her back and her difficulty walking, she sometimes was unable to make it to the cafeteria to eat, thereby identifying a program from which Lasalle excluded her. ECF No. 1 ¶53.[3] Nonetheless, Lasalle employees denied Ms. Manrique Yaruro the wheelchair she needed to access ICDC's meals program. *Id*. Likewise, Lasalle's denials of a thicker mattress to Ms. Manrique Yaruro denied her the benefit of ICDC's housing service. *Id*. ¶50-51. Finally, Lasalle only intermittently allowed her access to a

---

[3] Lasalles cites *Siskos v. Sec'y, Dep't of Corr.,* in support of its assertion that "plaintiff's claim under the Rehabilitation Act is properly subject to dismissal where the plaintiff does not allege facts that the defendant excluded him from such services," but that case discusses only whether the plaintiff's proposed accommodation fundamentally altered the nature of prison programs.

wheelchair to go to the medical unit and denied her prescribed pain management medications and therapeutic aids such as a back brace, foam wedge, and thicker mattress. *Id*. ¶¶48-5. Lasalle therefore denied her the benefits of ICDC's medical services and mobility assistance programs. As such, she has sufficiently pleaded that Defendant Lasalle excluded her and denied her the benefits of ICDC programs and services.

### B. Lasalle Discriminated Against Ms. Manrique Yaruro and Was Deliberately Indifferent to her Disability.

Defendant Lasalle correctly asserts that in order to recover damages for a violation of the Rehabilitation Act, a plaintiff must demonstrate that the defendant either intentionally discriminated against the plaintiff or was deliberately indifferent to their statutory rights." ECF No. 9 at 9. Discimination "requires a showing of prejudice, spite, or ill will" while deliberate indifference in a Rehabiliation Act context requires a showing that "the defendant *knew* that harm to a federally protected right was substantially likely and ... *failed* to act on that likelihood." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012). When a defendant is informed of, yet ignored the disability and need for accomodation, they are deliberately indifferent. *Garner v. Bryson*, No. 516CV121CARCHW, 2018 WL 9963836, at *5 (M.D. Ga. Jan. 12, 2018), r*eport and recommendation adopted,* No. 516CV121CARCHW, 2018 WL 9963963 (M.D. Ga. Mar. 6, 2018);*Suarez v. City of Hollywood*, No. 16-62215-CIV, 2016 WL 8738228, at *4 (S.D. Fla. Dec. 5, 2016). Knowledge of a need for accommodation can be imputed on an official if that need is obvious. *See Arenas v. Georgia Dep't of Corr.*, No. CV416-320, 2020 WL 1849362, at *12 (S.D. Ga. Apr. 13, 2020),

Defendant Lasalle and its employees knew of and failed to provide Ms. Manrique Yaruro with the auxiliary aids she needed to participate in programs within ICDC. Lasalle knew that Ms. Manrique Yaruro required these aids because Defendants Hughes and McMahman eventually

ordered her a thicker mattress and a foam wedge, and periodically allowed her the use of a wheelchair after more than four months of complaints. *See* ECF No. 1 ¶¶49, 51, 53. Other Lasalle employees observed Ms. Manrique Yaruro's struggling to walk and screaming in pain. *Id*. ¶¶53-54.

Defendants Hughes, McMahan, and Paulk, had the authority to order to Ms. Manrique Yaruro the accommodations she required. ICE's Intergovernmental Service Agreement requires that "where ICE federal detainees are housed, the ICE federal detainees are to be housed in accordance with ICE Standards."[4] ICE's 2008 PBNDS Performance Based National Detention Standards require that "[t]he clinical medical authority together with the administrative health authority establishes the processes and procedures necessary to meet the medical standards" outlined in the PBNDS.[5]  The 2008 PBNDS also requires that detained individuals "with special needs, including physical or developmental disabilities, will be evaluated and given the appropriate care and communication their situation requires."[6] The facility administrator is responsible for "developing a plan to ensure that ICE is notified in writing of any detainee whose special medical or mental health needs require special consideration in such matters as housing, transfer, or transportation." Likewise, the facility administrator is responsible for ensuring that detained people receive necessary accommodations, communicating with ICE regardings those accommodations, and approving each denial of accommodations.[7]

---

[4] Intergovernmental Agreement, United States Marshals Service and Irwin County Detention Center, Jul. 25, 2007, https://www.ice.gov/doclib/foia/isa/irwincountydetentioncenter-ocilla-ga-20070058.pdf
[5] ICE, ICE/DRO Detention Standard: Medical Care, Dec. 2, 2008, https://www.ice.gov/doclib/dro/detention-standards/pdf/medical_care.pdf.
[6] *Id*.
[7] ICE, 11071.1: Assessment and Accommodations for Detainees with Disabilities at 8 (Dec. 15, 2016), https://www.aila.org/File/DownloadEmbeddedFile/83031; ICE, Policy No. ___, Disability Identification, Assessment, and Accommodation, 2019, https://www.ice.gov/doclib/detention-standards/2019/modelDisabilityAccommodations.pdf.

Defendant Lasalle both intentionally discriminated against Ms. Manrique Yaruro and was deliberately indifferent to her right to accommodation under the Rehabilitation Act. Despite almost four months of complaints from Ms. Manrique Yaruro, Defendant Hughes, presumably with the approval of Defendants McMahan and Paulk, denied her request for a thicker mattress. *Id*. ¶50. Likewise, despite observing Ms. Manrique Yaruro struggling to walk, Lasalle employees denied her regular use of a wheelchair to go to the cafeteria and, at times, to go to the medical unit. *Id*. ¶53. In addition to these outright denials, other Lasalle employees were deliberately indifferent to Ms. Manrique Yaruro's disability. Defendant McMahan, ICDC's clinical medical authority, and Defendant Paulk, ICDC's facility administrator, failed to ensure that Ms. Manrique Yaruro disability accommodation needs were met as required by the 2008 PBNDS. *Id*. ¶¶18, 20. Though Ms. Manrique Yaruro complained to Defendants Hughes and Mcmahan at least thirteen times regarding her back pain, they denied her any accommodation by failing to act in the six months between when she first reported her injuries and her release. *Id*. ¶¶49, 51.

Defendant Lasalle argues that it was not deliberately indifferent because "every request she made to ICDC was granted" and "specialist care for her back was ordered, an extra thick mattress and a foam wedge were ordered, a back brace was ordered, and she was provided medication for treatment of her alleged condition." ECF No. 9 at 11. However, Ms. Manrique Yaruro never received any of the accommodations, even if Defendants did order them. Unreasonable delays in providing accommodation can constitute deliberate indifference. *See Segev v. Lynn Univ., Inc.*, No. 19-81252-CIV, 2021 WL 1996437, at *4 (S.D. Fla. May 19, 2021) (Finding a "sufficient record evidence from which a reasonable juror could conclude that [defendant's] failure to provide accommodations was the result of deliberate indifference to Plaintiff's needs."). Here, Defendant Lasalle inexplicably waited from April 2020 until

September 2020 to order Ms. Manrique Yaruro the back brace, thick mattress, and foam wedge she required and then failed to produce those aids from September of 2020 until Ms. Manrique Yaruro's release on December 24, 2020. ECF No. 1 ¶¶49, 51, 57. Even if there is a question as to whether any accommodation provided to Ms. Manrique Yaruro is reasonable, such an inquiry would involve fact finding inappropriate for resolution on a motion to dismiss. *See McCray v. City of Dothan*, 169 F. Supp. 2d 1260, 1275 (M.D. Ala. 2001), *aff'd in part, rev'd in part,* No. 01-15756-DD, 2003 WL 23518420 (11th Cir. Apr. 24, 2003); *Larsen v. Carnival Corp.*, No. 02-20218CIVGRAHAM, 2002 WL 31345612, at *5 (S.D. Fla. June 12, 2002).

Finally, the Defendant Lasalle argues that Ms. Manrique Yaruro " cannot now bootstrap her claims for medical negligence to a claim of medical discrimination." ECF No. 9 at 10-11. However, just as in the case cited by Defendant Lasalle, the court distinguished between medical malpractice claims and Rehabilitation Act claims and denied the defendant's motion to dismiss, to find that "to the extent that Plaintiff's claim is premised on the failure to provide certain accommodations related to [Plaintiff's] disability, such as an appropriate cell assignment, then this claim survives" *Arenas,* 2018 WL 988099, at *8. Here, Ms. Manrique Yaruro alleges that Lasalle failed to provide mobility aids and pain management that would have allowed her to participate in ICDC programs, not that Lasalle negligently treated her medical conditions. As a reasonable factfinder could find that Defendant Lasalle's failures demonstrate either intentionally discrimination or deliberate indifference, their motion to dismiss should be denied.

### C. Ms. Manrique Yaruro Was Not Required to Exhaust Administrative Remedies

Defendant Lasalle argues that the instant case should be dismissed because Ms. Manrique Yaruro did not use Lasalle's grievance procedures to request disability accommodations. ECF No. 9 at 11. As a preliminary matter, the exhibits submitted by Lasalle in support of its motion to

9

dismiss should be excluded as extraneous evidence. When reviewing a motion to dismiss, a district court should consider only "the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2007) (citations omitted). A court may take judicial notice of public records and facts "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendant Lasalle submits and relies on a declaration from Defendant Paulk, a copy of the detainee handbook, and a blank grievance form. *See* ECF No. 9-1, 9-2, 9-3. These documents are neither incorporated into Plaintiffs' petition by reference nor are matters of which a court may take judicial notice. Nothing contained therein is public record or "generally known," and many of the facts in the declarations conflict with the facts in the petition itself.

Generally, because failure to exhaust administrative remedies is an affirmative defense, plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaint." *Jones*, 549 U.S. at 216. Defendant Lasalle relies on two cases to argue that it may introduce extraneous evidence at the motion to dismiss stage, both cases explicitly premise those exceptions on the mandatory exhaustion language of the Prison Litigation Reform Act ("PLRA"). *Bryant v. Rich,* 530 F.3d 1368, 1374-75, 77 (11th Cir. 2008); *Turner*, 541 F.3d at 1083.[8] However, as Lasalle acknowledges, "the exhaustion of administrative requirements under

---

[8] *Turner* discusses favorably the conversion of motions to dismiss to motions for summary judgment pursuant to Fed. R. Civ. P. 12(d) when a court does not exclude the Defendant's evidence regarding exhaustion of administrative remedies. 541 F.3d at 1083. If the nonmoving party in motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P.

the PLRA does not extend to immigration detainees," like Ms. Manrique Yaruro. ECF No. 9 at 12. Ms. Manrique Yaruro was not a prisoner. Further, as the Rehabilitation Act contains no mandatory exhaustion requirement outside of in an employment context, the cases relied upon by Lasalle and the exception they create are inapplicable here. *See Hewitt v. U.S. Off. of Pers. Mgmt.*, 390 F. Supp. 2d 685, 690 (N.D. Ill. 2005) (Defendant's "citation of cases involving employment claims under the Rehabilitation Act are inapposite because the Rehabilitation Act carves out a special exhaustion requirement for § 504 [Rehabilitation Act] claims involving employment."); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1114 (S.D. Fla. 2016) (Finding in a Torture Victims Protection Act case that because the court could not discern "any authority requiring the defense of failure to exhaust local remedies under the TVPA to similarly be treated, for procedural purposes, like a jurisdictional defense. . . [t]he Court therefore declines the parties' invitation to consider and weigh extrinsic evidence in assessing the viability of defendants' exhaustion defense at the motion to dismiss stage.").

Still, Lasalle urges this Court to decide the administrative exhaustion issue at this stage for prudential reasons. ECF No. 9 at 12. Where Congress has not clearly required exhaustion, as is the case here, "sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. 140, 144 (1992).[9] As "federal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them," courts should not require exhaustion where an administrative remedy may be inadequate to resolve the relevant issue. *Id*. at 146-47. For example, an agency may be unable to grant relief because it lacks institutional competence to resolve the issue or if the

---

56(d). Considering the numerous factual disputes raised by the parties in this case, we would ask that the Court either defer this motion as premature and allow a discovery period regarding exhaustion of administrative remedies in the event that it does not dismiss this motion outright.

[9] Though *McCarthy* is no longer binding in a prison or jail context due to the subsequent enactment of the PLRA, it controls here as the PLRA does not apply to immigration detention cases and the Rehabilitation Act contains no analogous exhaustion requirement. except in employment cases.

11

administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id*. at 147-48. In *McCarthy*, the Court found that despite the Bureau of Prisons' "substantial interest in encouraging internal resolution of grievances," the "availability of a money damages remedy is, at best, uncertain, and the uncertainty of the administrative agency's authority to award relief counsels against requiring exhaustion" where the plaintiff sought only monetary relief. *Id*. at 155; *see also Olson v. Loy*, 951 F. Supp. 225, 228 (S.D. Ga. 1996) ("Since the essence of [Plaintiff's]" claim is one for monetary relief, he is not required to exhaust his administrative remedies prior to asserting this action").

As in *McCarthy*, prudential concerns counsel against requiring administrative exhaustion here. Defendant Lasalle is not an agency or administrative body, but rather a private business entity contracted to provide ICE detention programs and services. *See Webb v. McQuade,* No. EP21CV00254DCGATB, 2022 WL 136464, at *1 n.3, 4 (W.D. Tex. Jan. 14, 2022). As a for profit corporation it lacks both the competence and ability to grant relief. Lasalle's detainee handbook, which it submits as evidence of its grievance system, makes no mention of how to request disability accommodation or monetary compensation for Rehabilitation Act violations. *See* ECF No. 9-2 at 11-12. Indeed, while Lasalle correctly asserts that exhaustion may be required "where institutional interests favoring exhaustion outweigh a litigant's personal interests," it specifies no particular interest that it has in maintaining an exhaustion requirement here. ECF No. 9 at 13.

Nor does ICE, an immigration enforcement agency, have any special expertise or overarching interest in interpreting disability provisions or granting monetary relief for Rehabilitation Act violations. To the extent that Ms. Manrique Yaruro was required to put ICE on notice regarding her Rehabilitation Claims, Ms. Manrique Yaruro did so in her April 21, 2021

Federal Tort Claims Act administrative complaint. *See* Exhibit 2, Administrative Notice of Federal Tort Claims Act Claims. Additionally ICE in this case demonstrated bias and an inability to resolve Ms. Manrique Yaruro's claims when Defendant Officer White berated her for participating in a video, ordered Lasalle employees to attack her, and then mocked her request for accommodations. ECF No. 1 ¶¶33, 34, 55, 56.

Likewise, to combat discrimination against people with disabilities, Congress intended to waive any exhaustion requirement. In the Committee Report on the Americans with Disabilities Act, Pub.L. 101-336, the House Report stated that "consistent with section 504, it is not the Committee's intent that persons with disabilities need to exhaust Federal administrative remedies before exercising their private right of action." H.Rep. No. 101-485, 101st Cong., 2nd Sess. 98 (1990), *reprinted in* [1990] 4 U.S.C.C.A.N. 267, 303, 381. Indeed, numerous courts have declined to require exhaustions of Rehabilitation Act claims outside of PLRA and employment contexts. *See e.g. Adashunas v. Negley,* 626 F.2d 600, 603 (7th Cir.1980) ("[T]he Rehabilitation Act does provide the handicapped with affirmative rights, does create a private right of action and does not require exhaustion of administrative remedies"); *Pendleton v. Jefferson Loc. Sch. Dist. Bd. of Educ.,* 958 F.2d 372 at *6 (6th Cir. 1992) ("The Rehabilitation Act does not require exhaustion of administrative remedies before bringing a civil action."); *Davis v. United States Off. of Pers. Mgmt.*, No. 3:06CV244/LAC, 2007 WL 9736109, at *1 (N.D. Fla. Aug. 30, 2007) (Finding that plaintiff need not exhaust administrative Rehabilitation Act claims before the Officer of Personnel Management before filing suit.). Because Ms. Manrique Yaruro seeks only monetary damages, Lasalle's grievance procedures are unable and unwilling to redress the disability accommodation issues of people detained at ICDC, and Congress intended to

maximize access to the courts for those with Rehabilitation Act claims, this Court should not mandate exhaustion in non prisoner, non employee Rehabilitation Act suits.

Even if the Court were to deem the exhaustion issue decidable at this stage of proceedings, the Court should waive any exhaustion requirement here as "[r]emedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Turner*, 541 F.3d at 1084. In the one case cited by Lasalle indicating that exhaustion analysis may apply to immigration detention cases, the court found that the exhaustion requirement was waived because "even under a traditional exhaustion analysis, inmates are not required to continue the grievance process if they are granted relief but do not actually receive it." *Murray v. Corr. Corp. of Am.,* No. CV 11-2210-PHX-RCB, 2012 WL 2798759, at *4 (D. Ariz. July 9, 2012); *see also Harvey v. Jordan,* 605 F.3d 681, 685 (9th Cir.2010) ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised."). Likewise, exhaustion is not required when grievances would likely have been futile. *See Franco-Gonzalez v. Holder*, 767 F. Supp. 2d 1034, 1047 (C.D. Cal. 2010).

Here, no functional grievance system existed for Ms. Manrique Yaruro to request the accommodations she required. As discussed above, the detainee handbook presented by Defendant Lasalle contained no instructions on how to request disability accommodations. *See* ECF No. 9-2 at 11-12. Though Ms. Manrique Yaruro's English proficiency is limited and ICE's 2008 PBNDS requires that the "facility administrator or designee shall ensure procedures accommodate the special assistance needs of detainees who are disabled, illiterate, or limited in English in preparing and pursuing a grievance,"[10] Defendant Lasalle provided Ms. Manrique

---

[10] ICE, ICE/DRO Detention Standard: Grievance System, Dec. 2, 2008, https://www.ice.gov/doclib/dro/detention-standards/pdf/grievance_system.pdf

Yaruro with only an English language handbook. *See* Exhibit 3, Declaration of Ms. Manrique Yaruro ¶2; ECF No. 9-2. Lasalle, for its part, does not allege that it provided Ms. Manrique Yaruro, with the handbook in Spanish or any other explanation of how to file a grievance regarding her disability rights. *See* Manrique Yaruro Decl. ¶¶2-4. Though Lasalle implies that Ms. Manrique Yaruro could access ICDC's grievance procedures by submitting a "formal grievance form," that form was not available in her unit or any other place to where she had access. *See* ECF No. 9-3, Manrique Yaruro Decl. ¶9. Lasalle also intimates that Ms. Manrique Yaruro could have filed a grievance using the tablet in her unit, but she lost access to that tablet after Lasalle employees' April 21, 2020 attack. *See* Manrique Yaruro Decl. ¶8.

Ms. Manrique Yaruro should not be expected to have used ICDC's grievance system even if she knew it existed because of that attack. As Lasalle employees already attacked her and confined her in segregation for two weeks for complaining about ICDC conditions, she reasonably feared that further complaints would be met with similar reprisals. *Id*. ¶ 7. ECF No. 1 ¶3. Finally, as Lasalle employees eventually told Ms. Manrique Yaruro that they ordered her accommodations, she should not be expected to file grievances over remedies already promised. *See Harvey,* 605 F.3d at 685. As such, even if this Court determines that the exhaustion issue is currently ripe for disposition, any exhaustion requirement should be waived given the Lasalle's made its grievance system functionally unavailable to Ms. Manrique Yaruro.

IV. **Conclusion**

Ms. Manrique Yaruro sufficiently pled that Defendant Lasalle intentionally and with deliberate indifference excluded her from participation in and the benefits of ICDC programs and services. Prudential considerations counsel against reading an administrative exhaustion requirement into the Rehabilitation Act, and in any case, any such requirement should be waived

here given the unavailability of any functional grievance system at ICDC. As such, we respectfully request that this Court deny Defendant Lasalle's motion to dismiss.

Dated: June 27, 2022

                                      Respectfully submitted,

                                      /s/ Jeremy Jong
                                    Jeremy Jong*
                                    New Jersey Bar Number: 066472014
                                    Al Otro Lado
                                    3511 Banks Street
                                    New Orleans, LA 70119
                                    Telephone: (504) 475-6728
                                    Email: jeremy@alotrolado.org

                                    Shirley Zambrano
                                    Georgia Bar Number: 41429
                                    Zambrano & Ruiz, LLC
                                    1995 N Park Pl SE Suite 240,
                                    Atlanta, GA 30339
                                    Telephone: (770) 769-5820
                                    szambrano@zambranoandruiz.com

                                    *Pro Bono Counsel for Plaintiff*

                                *\* admitted pro hac vice*