IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| ANDREA MANRIQUE YARURO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:22-cv-39 (WLS) |
| | : | |
| UNITED STATE OF AMERICA, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Presently before the Court is the United States Motion to Dismiss Plaintiff's Claims against the United States, and the Immigration and Customs Enforcement agency ("ICE"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as well as Defendant LaSalle Southeast, LLC's, Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Docs. 8, 9 & 19.) Therein, the United States requests that this Court dismiss Counts One through Five of Plaintiff's Complaint (Doc. 1) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or in the alternative pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 19.) In addition, the United States requests that this Court dismiss Count Six pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 19.) LaSalle Southeast, who was only named in Count Six of the Complaint, also moves to dismiss Count Six pursuant to Fed. R. Civ. P. 12(b)(6) for the same reasons. (Docs. 8 & 9.)[1]

For the reasons that follow, the United States' Motion to Dismiss Plaintiff's Claims pursuant to 12(b)(6) (Doc. 19) is **GRANTED**. In addition, LaSalle Southeast's Motion to Dismiss Count Six of Plaintiff's Complaint pursuant to 12(b)(6) (Doc. 8) is **GRANTED**. As it is not necessary to do so, the Court declines to review the United States Motion to Dismiss

---

[1] The Court notes for the purposes of the record that Defendant LaSalle filed its Motion to Dismiss (Doc. 8) and Brief in Support of LaSalle's Motion to Dismiss, which was incorrectly labeled as a memorandum, (Doc. 9) as separate docket entries. Given that Defendant LaSalle's arguments in support of its Motion to Dismiss (Doc. 8) are contained within its Brief in Support (Doc. 9) the Court shall cite to the arguments contained within Defendant's brief in support.

pursuant to 12(b)(1) at this time. Defendant LaSalle Southeast, the United States and its agency, ICE, are **DISMISSED** from this action.

## RELEVANT PROCEDURAL HISTORY

On April 21, 2022, Plaintiff, Andrea Manrique Yaruro, commenced this action by filing a Complaint against the United States of America, U.S. Immigration and Customs Enforcement, LaSalle Southeast LLC, David Paulk, Howard McMahan, Amber Hughes, FNU Battle, Unnamed Irwin County Detention Center ("ICDC") Officers #31-5, FNU Watson & FNU Chappelle.[2] (Doc. 1.) Plaintiff seeks damages for alleged assaults and batteries sustained while detained at LaSalle Southeast LLC by Defendants, denial of medical treatment, negligent and intentional infliction of emotional distress, negligence, discrimination pursuant to the Rehabilitation Act, and the First Amendment. (Doc. 1.) Pursuant to Plaintiff's Complaint (Doc. 1) Plaintiff asserts the following claims, under the Federal Tort Claims Act, against the United States and its agency ICE: (1) Assault, (2) Battery, (3) Intentional Infliction of Emotional Distress, (4) Negligent Infliction of Emotional Distress, and (5) Negligence. Plaintiff also brings a sixth (6) claim pursuant to the Rehabilitation Act against LaSalle Southeast and the United States.

The United States and LaSalle Southeast subsequently moved to dismiss Plaintiff's Complaint. (Docs. 8 & 19.) Plaintiff filed Responses in Opposition (Docs. 11 & 22) and the United States and LaSalle replied. (Docs. 18 & 31.) Accordingly, briefing has concluded and the United States and LaSalle Southeasts' Motions to Dismiss (Docs. 8 & 19) are ripe for disposition.

## RELEVANT FACTUAL SUMMARY

Plaintiff, Andrea Manrique Yaruro, is an asylum seeker from Columbia who was previously detained at the Irwin County Detention Center ("ICDC"). (Doc. 1 ¶ 3.) On April 12, 2020, Plaintiff participated in a video call – with several other ICE detainees – in which

---

[2] The Court notes for the purposes of the record that Defendants (1) David Paulk, (2) Howard McMahan, (3) Coretta Battle, (4) Amber Hughes and (5) Jamaal Watson were dismissed from this action on January 9, 2023, for failure to effect service of process within the timeframe provided by Fed. R. Civ. P. 4(m). (Doc. 58.) In addition, Defendant Erica Chappelle was dismissed from this action on November 8, 2022, pursuant to the Parties Joint Motion. (Docs. 52, 53 & 54.)

2

they communicated to another detainee's family the lack of Covid-19 safety precautions in the facility.[3] (Doc. 1 ¶ 30.) That video was shared with others, ultimately resulting in several prominent national news organizations covering the conditions that ICE detainees were subjected to at the ICDC.[4] (Doc. 1 ¶ 31.)

According to Plaintiff's Complaint, a week after the video, which this Court calculates as being on or about April 19, 2020, an ICE Deportation Officer, William White, told Plaintiff and her fellow detainees that they were cockroaches who were being detained to make others money, and that there would be no consequences if the women died.[5] (Doc. 1 ¶¶ 2, 32 & 33.) Plaintiff then alleges that on April 21, 2020, several ICDC guards entered Plaintiff's unit – while covering their name tags to obscure their identities – and threw Plaintiff into a table before dragging her into a "punishment cell" in retaliation for Plaintiff's leadership role in the video. (Doc. 1 ¶ 3, 34 & 36.)[6]

While Plaintiff was subsequently taken to the ICDC's medical unit, no medical staff examined or tended to her injuries that day. (Doc. 1 ¶ 37 & 39.) Rather Plaintiff suggests that the reason that she was brought to the medical center was to coerce her into signing a document stating that no injuries had resulted from the assault, which she did not sign. (Doc. 1 ¶ 38.) Plaintiff was subsequently confined to a "punishment cell" for fourteen (14) days. (Doc. 1 ¶ 40 & 41.)

---

[3] The Court notes for the purposes of the record that Plaintiff states in her Complaint that the video was taken in April 2021. (Doc. 1 ¶ 1.) The Court assumes this to have been a typographical error as the events Plaintiff alleges occurred after the video mainly occurred in 2020.

[4] The Court notes for the purposes of the record that the Irwin County Detention Center made national news in light of allegations that multiple ICE detainees were subjected to unwarranted gynecological procedures (Doc. 1 ¶ 28.) Plaintiff does not claim to be one of the ICE detainees who alleges that they were subjected to an unwarranted gynecological procedure.

[5] The Court notes for the purposes of the record that whether an Officer White was in fact employed by ICE at the Irwin County Detention Center is a question of material fact that is disputed at this time. (Doc. 31 at 3.) While this issue would come into play if the Court were to reach the merits of the Government's Fed. R. Civ. P. 12(b)(1) arguments, as that is not required, the Court declines to address this as a factual dispute at this time.

[6] The Court notes for the purposes of the record that at the beginning of her Complaint Plaintiff states that the ICDC Officers assaulted her "subsequent" to Officer White's statement that there would be no consequences if the women died. (Doc. 1 ¶ 3.) Based on the timeline established by Plaintiff's pleadings it would appear that the ICDC officers' actions took place two (2) days after Officer White's alleged comment. (See Doc. 1 ¶ 32, 33 & 34.)

3

On May 5, 2020, Plaintiff was released from the punishment cell and placed in a new unit overseen by Defendant White.[7] (Doc. 1 ¶ 46.) Plaintiff alleges that despite reporting that she was experiencing back pain on April 24, May 6, May 18, June 3, June 15, June 29, July 23, July 30, August 13, September 16, October 24, and November 2, 2020, Defendants failed to provide her with necessary pain medication, specialist care, physical therapy or disability accommodation. (Doc. 1 ¶ 47, 48 & 49.) Plaintiff also claims that she was advised that she did not meet the criteria for a thicker mattress on August 13, 2020, but that an extra thick mattress as well as a foam wedge, and a back brace, were ordered on Plaintiff's behalf in September 2020. (Doc. 1 ¶ 50 & 51.) Plaintiff never received those disability accommodations, however. (Doc. 1 ¶ 51.) In addition, Plaintiff claims that she would at times use a wheelchair to go to the medical unit, but she was not permitted to use it for any other reason. (Doc. 1 ¶ 53.)

Plaintiff also alleges that she requested outside specialist care on July 30, 2020, but ICDC medical staff did not order a referral until October 25, 2020. (Doc. 1 ¶ 52.) Further, Plaintiff claims that she never received the specialist care that was referred. (*Id.*) Plaintiff further alleges that despite ICDC guards and ICE officers witnessing Plaintiff screaming in pain, they continued to deny her treatment, even after magnetic resonance imaging showed damage to Plaintiff's spinal discs in August 2020.[8] (Doc. 1 ¶ 54, 55 & 56.)

Plaintiff was subsequently released from ICE custody on December 24, 2020. (Doc. 1 ¶ 57.) According to Plaintiff's Complaint, the ICDC guards' attack and the subsequent isolation and denial of medical treatment that Plaintiff was forced to endure, left Plaintiff with displaced and degraded discs in her spine, post-traumatic stress disorder ("PTSD"), and depression. (Doc. 1 ¶ 4, 58, 59 & 60.) While Plaintiff submitted a Federal Tort Claims Act claim on April 21, 2021, that claim was denied on December 21, 2021. (Doc. 1 ¶ 13.)

---

[7] The Court notes for the purposes of the record that it is unclear from the face of Plaintiff's Complaint whether Defendant White is the beforementioned ICE Deportation Officer, William White. Further, the Court notes for the purposes of the record that no Defendant White was named as a Defendant in this action or served with process. Finally, upon review of the packet of requests to waive service, which were delivered to the Irwin County Detention Center on May 16, 2022, (Doc. 33-1), the Court notes that Plaintiff at no point made any attempt to serve a Defendant White in this action.

[8] The Court notes for the purposes of the record that Defendant LaSalle included a Declaration from Warden David Paulk that stated that Plaintiff never formally filed a formal grievance. (Doc. 8-1.) The Court declined to consider the affidavit when ruling on Defendant's 12(b)(6) Motion, however, as it is not necessary to do so and would also have improperly converted the present issue into a Rule 56 Motion for Summary Judgment.

**DISCUSSION**

As stated *supra*, the United States requests that this Court dismiss Counts One through Five of Plaintiff's Complaint (Doc. 1) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or in the alternative pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 19.) In addition, the United States and LaSalle Southeast both request that this Court dismiss Count Six of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Docs. 8 & 19.)

More specifically, the United States contends that this Court lacks subject matter jurisdiction over Counts One through Five of Plaintiff's Complaint, because those claims are barred by either the intentional tort exception or the independent contractor exception, or in the alternative Counts One through Five are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 19 at 1.) In addition, the United States and LaSalle both contend that Count Six of Plaintiff's Complaint, which was brought under the Rehabilitation Act, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and failure to exhaust administrative remedies. (Docs. 9 & 19.)

As Plaintiff has failed to allege sufficient facts to state a claim against the United States in her Complaint the Court declines to reach the Government's Fed. R. Civ. P. 12(b)(1) arguments. For the reasons that follow, the United States and LaSalle Southeasts' Motions to Dismiss Plaintiff's Complaint pursuant to 12(b)(6) (Docs. 8& 19) are **GRANTED**.

**I.      Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted.  A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'"  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)).  "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'"  *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d

1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint). In addition to considering the four corners of a complaint, a district court may also consider an extrinsic document only if it is central to a plaintiff's claim and its authenticity has not been challenged. *SFM Holdings, Ltd. v. Banc of America Sec., LLC.*, 600 F.3d 1334, 1337 (11th Cir. 2010).

**II.     Plaintiff has Failed to State a Claim under the Federal Tort Claims Act Against the United States**

As stated *supra*, Plaintiff asserts the following claims, under the Federal Tort Claims Act, against the United States: (1) Assault, (2) Battery, (3) Intentional Infliction of Emotional Distress, (4) Negligent Infliction of Emotional Distress, and (5) Negligence. (Doc. 1.) Plaintiff also brings a sixth claim pursuant to the Rehabilitation Act against ICE. In the present case, Plaintiff's claims against the United States and its agency ICE are due to be dismissed as Plaintiff has failed to plead a claim against the United States or its agency ICE.

Plaintiff has failed to adequately plead a claim against the United States as Plaintiff has not articulated facts that would link the actions of the Irwin County Detention Center Guards to the United States. (Doc. 1.) More specifically, each of the claims that Plaintiff asserts under the FTCA are claims that are more accurately attributable to the ICDC and are only linked to the United States through Plaintiff's unsupported and conclusory statements.

While Plaintiff argues that she has pled specific reasons to believe that Officer White – and therefore ICE – ordered her assault and battery which resulted in her other claims, Plaintiff never articulates what those reasons are, but rather relies upon unsupported and conclusory statements that do not provide this Court with actual factual allegations. This Court shall address why each of Plaintiff's claims, fails to state a claim, in turn.

### a. Plaintiff Failed to Plead a FTCA Assault Claim against the United States

In the present case, Plaintiff failed to adequately plead a FTCA assault claim against the United States, because Plaintiff has not pled facts that link the United States to the assault the Plaintiff suffered at the hands of ICDC's personnel. As to her assault claim, Plaintiff merely states that "ICDC guard Defendants acted at Defendant ICE behest when they threw [Plaintiff] into a table." (Doc. 1 ¶ 78.) "ICE controlled the ICDC guards' time, manner, and method of executing the work here through their intergovernmental service agreements." (*Id.*)

Those statements are legal conclusions, however, not facts and are belied by the rest of the allegations in Plaintiff's Complaint.[9] (Doc. 1.) For example, in paragraphs 34 through 36 of Plaintiff's Complaint, Plaintiff alleges that several unknown ICDC Officers came into Plaintiff's unit on April 21, 2021, and after yelling at her threw her into a table. (Doc. 1 ¶¶ 34-36.) There is no mention of any ICE employee participating in that assault and battery, or having knowledge of or directing the same.[10] (Doc. 1.) Further, Plaintiff has not alleged any facts that would support Plaintiff's legal conclusion that "ICE controlled the ICDC guards' time, manner, and method of executing the work here through their intergovernmental service agreements." (Doc. 1 ¶ 78.)

---

[9] See *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010) (explaining that a legal conclusion must be supported by factual allegations to survive a motion to dismiss.)

[10] The Court also notes for the purposes of the record that based on the timeline established by Plaintiff's pleadings, this alleged assault and battery would have taken place two (2) days after Officer White's alleged comment that there would be no consequences if the women died. (Doc. 1 ¶¶ 2, 32 & 33.)

7

Accordingly, as Plaintiff has failed to plead sufficient facts to adequately plead a FTCA assault claim against the United States, the United States Motion to Dismiss (Doc. 19) Plaintiff's Assault Claim pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

### b. Plaintiff Failed to Plead a FTCA Battery Claim against the United States

In the present case, Plaintiff failed to adequately plead a FTCA battery claim against the United States, because Plaintiff has not pled facts that link the United States to the battery Plaintiff suffered at the hands of ICDC's personnel. As to her battery claim, Plaintiff merely states that "ICDC guard Defendants acted at ICE's behest when they threw [Plaintiff] into a table, aggressively handcuffed her, and dragged her body away as ICE controlled the ICDC guards' time, manner, and method of executing the work." (Doc. 1 ¶ 85.) Liability for intentionally wrongful acts require more than the mere existence of a contractual relationship, however. In addition, as stated *supra*, Plaintiff's statement is legal conclusion and does not articulate sufficient facts to make out a battery claim against the United States, because no employee of the United States has been linked to the battery outside of Plaintiff's conclusionary statement.

Accordingly, as Plaintiff has failed to plead sufficient facts to adequately plead a battery claim against the United States, the United States Motion to Dismiss (Doc. 19) Plaintiff's Battery Claim pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

### c. Plaintiff Failed to Plead a FTCA Intentional Infliction of Emotional Distress Claim against the United States

In the present case, Plaintiff failed to adequately plead a FTCA Intentional Infliction of Emotional Distress claim against the United States, because Plaintiff has not pled facts that show that any United States employee engaged in intentional or reckless conduct that was extreme or outrageous. As to Plaintiff's intentional infliction of emotional distress claim, Plaintiff alleges that ICE "directed the ICDC guard Defendants to attack [Plaintiff] and confine her in segregation," and that Defendant White and his colleagues then systematically "denied [Plaintiff's] requests for medical care, pain management, and disability accommodation." (Doc. 1 ¶ 91.) However, as explained in more detail *supra,* Plaintiff failed to make any plausible, factual assertions, that would allow this Court to conclude that ICE had ordered the attack on Plaintiff apart from her conclusory statement. Finally, the Court notes

for the purposes of the record that while Plaintiff did articulate facts that would show that the denial of medical treatment was either intentional or reckless, Plaintiff's Complaint makes it clear that she was not completely denied medical treatment, but rather specific forms of treatment, that she had requested. (Doc. 1 ¶ 46-56.)

Accordingly, while this Court finds that Plaintiff has recited the elements of the cause of action in her Complaint, those allegations are supported by mere conclusory statements and do not suffice with respect to the United States of America. *Iqbal*, 556 U.S. at 679. For that reason, the United States Motion to Dismiss (Doc. 19) Plaintiff's Intentional Infliction of Emotional Distress Claim pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

### d. Plaintiff Failed to Plead a FTCA Negligent Infliction of Emotional Distress Claim against the United States

In the present case, Plaintiff failed to adequately plead a Negligent Infliction of Emotional Distress claim against the United States, because Plaintiff has not pled facts that show that any United States employee engaged in conduct that resulted in a physical impact to the plaintiff, which would be the source of mental suffering or emotional distress. As to Plaintiff's negligent intentional infliction of emotional distress claim, Plaintiff alleges that "ICE and its employees' actions in directing ICDC guard Defendants to attack [Plaintiff] caused physical injury to her," and as a result of that attack Plaintiff had suffered mental and emotional distress. (Doc. 1 ¶ 97 & 98.)

As explained in more detail *supra*, however, Plaintiff failed to make any plausible, factual assertions, that ICE had directed the assault on Plaintiff. Accordingly, Plaintiff has failed to adequately plead facts that show that any United States employee engaged in conduct that resulted in a physical impact to Plaintiff, which is one of the elements of Plaintiff's negligent infliction of emotional distress claim. Accordingly, the United States Motion to Dismiss (Doc. 19) Plaintiff's Negligent Infliction of Emotional Distress Claim pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

### e. Plaintiff Failed to Plead a FTCA Negligence Claim against the United States

Plaintiff has also failed to adequately plead a negligence claim against the United States, because Plaintiff has not pled facts that show a legally attributable causal connection between the conduct and the resulting injuries, which is a required element of a negligence claim under Georgia law. As to Plaintiff's negligence claim, Plaintiff alleges that "ICE and its employees breached their duty to [Plaintiff] by subjecting her to violence at the hands of ICDC guard Defendants, withholding medical treatment and disability accommodation, and failing to properly oversee and supervise its contractors in the medical treatment of and disability accommodations of Plaintiff." (Doc. 1 ¶ 103.)

As outlined in more detail above, however, Plaintiff failed to plead facts that would connect ICE or any of its employees to the violence or subsequent lack of treatment she was subjected at the hands of the ICDC guard Defendants. Accordingly, the United States Motion to Dismiss (Doc. 19) Plaintiff's Negligence Claim pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

### III. Plaintiff Failed to State a Claim under the Rehabilitation Act

Turning finally to Plaintiff's Rehabilitation Act claim. It is the United States and LaSalle Southeasts' position that Plaintiff has failed to state a claim under the Rehabilitation Act because Plaintiff has not properly stated a claim for relief and Plaintiff has failed to exhaust her claims at the administrative level. (Docs. 9 & 19.) More specifically, it is both Defendants' position that Plaintiff has actually pled a 42 U.S.C. § 1983 inadequate medical treatment claim and that Plaintiff's Rehabilitation Act claim is subject to dismissal as Plaintiff did not identify a single "service, program, activity, or other benefit from which she was excluded on the basis of any disability." (Docs. 9 at 7 & 19 at 15.) Both Defendants also contend that Plaintiff failed to allege intentional discrimination or deliberate indifference to Plaintiff's statutory rights. (Docs. 9 at 9 & 19 at 15.) Finally, both Defendants also contend that Plaintiff failed to exhaust her administrative remedies related to her Rehabilitation Act claim under the Prisoner Litigation Reform Act 42 U.S.C. § 1997e(a).[11] (Docs. 9 at 11 & 19 at 15.)

---

[11] The Court notes for the purposes of the record that Defendant LaSalle concedes that in the United States Court of Appeals for the Eleventh Circuit an immigrant detainee is not required to comply with the exhaustion requirements of the PLRA. (Doc. 9 at 12.) However, Defendant LaSalle still requests that the Court consider

In Response, Plaintiff contends that she did state a Rehabilitation Act claim as the services she was denied access to were ICDC meals, medical services and mobility assistance programs. (Doc. 22 at 18.) Plaintiff also contends that Congress intended to exempt the Rehabilitation Act from exhaustion requirements and that Government agencies have an affirmative obligation to ensure that their programs comply with the Rehabilitation Act. (Doc. 22 at 18.)

As an initial matter, it is readily apparent to this Court, that the instant claim may be more appropriately addressed as a 42 U.S.C. § 1983 claim for deliberate indifferent to a serious medical need. However, as Plaintiff is proceeding pursuant the Rehabilitation Act, the Court shall address Plaintiff's claim as such and explain why Plaintiff has failed to state a claim under the Rehabilitation Act. In order to state a claim under Section 504 of the Rehabilitation Act, a Plaintiff must generally allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1083 (11th Cir. 2007). Furthermore, when a private plaintiff seeks compensatory damages under the Rehabilitation Act the Complaint must show factually that the defendant acted "with discriminatory intent." *Boynton v. City of Tallahassee*, 650 Fed. Appx. 654, 658 (11th Cir. 2016) (quoting *McCullum v. Orlando Reg. Healthcare Sys., Inc.,* 768 F.3d 1135, 1146 (11th Cir. 2014). This requires factual allegations that "the defendant either intentionally discriminated against the plaintiff or was deliberately indifferent to his statutory rights." *Id.* (quoting *McCullum*, 768 F.3d at 1147) (quotation marks omitted).

In the present case, Plaintiff has failed to generally allege all three (3) parts of a Rehabilitation Act claim. As an initial matter, at no point in Plaintiff's Complaint does she factually allege that she is disabled or was perceived as disabled. (*See* Doc. 1.) Rather Plaintiff generally references her degraded and displaced discs which allegedly have resulted in a variety of symptoms. (Doc. 1 ¶ 59.) Furthermore, Plaintiff's Complaint is devoid of factual allegations that would give rise to the inference that the reason for the exclusion, denial of benefit, or

---

exhaustion of administrative remedies in its ruling. As it is not necessary to do so, the Court declines to reach the exhaustion argument.

11

discrimination from ICDC meals, medical services and mobility assistance programs was by reason of any disability suffered by Plaintiff. Finally, at no point does Plaintiff allege that the reason for the exclusion, denial of benefit, or alleged discrimination she received at the hands of Defendants was by virtue of the Defendants' "discriminatory intent" with respect to any disability suffered by Plaintiff.

Accordingly, as Plaintiff has not alleged that she is disabled or facts that show that either Defendant engaged in a Rehabilitation Act violation, Plaintiff has failed to make a Rehabilitation Act Claim. Accordingly, the United States and LaSalle Southeast's Motions to Dismiss Plaintiff's Rehabilitation Act Claim (Docs. 8 & 19) pursuant to 12(b)(6) is **GRANTED**.

## CONCLUSION

In conclusion, the United States' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 19) and Defendant LaSalle Southeast's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 8) are **GRANTED**. Accordingly, as no further claims remain against the United States, the Immigration and Customs Enforcement agency and LaSalle Southeast, the United States, ICE and LaSalle Southeast are **DISMISSED** from this action.

In addition, the United States Motion to Dismiss Counts One through Five of Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to 12(b)(1) is **DENIED as MOOT without prejudice**.

Finally, the Court notes for the purposes of the record that only Count Seven of Plaintiff's Complaint (Doc. 1) remains. Count Seven alleges a First Amendment claim against Defendant Officer William White. To date, Plaintiff has not perfected service of process against Officer William White. Furthermore, for the reasons outlined *supra* it would appear that Plaintiff has made no effort to serve Officer William White.

Accordingly, Plaintiff has failed to perfect service of process on Officer White within the timeframe provided for by Fed. R. Civ. P. 4m. Fed. R. Civ. P. 4m provides in relevant part that if a defendant is not served within ninety (90) days after the complaint is filed, the Court " – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

12

Accordingly, Plaintiff is hereby **ORDERED** to perfect service of process on Officer White **within thirty (30) days of the entry of this Order** or her Complaint will be subject to dismissal without prejudice for failure to perfect service without further notice.

**SO ORDERED**, this 23rd day of March 2023.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**